UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

**FILED**
**DEC 20 2005**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | CR. 05-40062 |
| Plaintiff, | * | |
| vs. | * | REPORT and RECOMMENDATION |
| | * | (Motion to Suppress) |
| RASHEEM SHACOR JONES, | * | |
| Defendant. | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Pending is Defendant's Motion to Suppress Search (Doc. 21). A hearing was held on Monday, December 5, 2005. Defendant was personally present and represented by his counsel of record, Assistant Federal Public Defender William Delaney, III. The Government was represented by Assistant United States Attorney John Haak. Sioux Falls Police Detectives John Matthews and Earl Miranda testified at the hearing. Additionally, both parties have submitted briefs and oral argument was heard at the conclusion of the hearing. Based on a careful consideration of all of the evidence, and counsel's written and oral arguments, the Court respectfully makes the following:

## RECOMMENDATION

It is respectfully recommended that Defendant's Motion to Suppress be **DENIED**.

## JURISDICTION

Defendant is charged in an Indictment with possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1). The pending Motion to Suppress was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Judge Piersol's Standing Order dated February 1, 2002.

## FACTUAL BACKGROUND

Sioux Falls Police Narcotics Detective John Matthews became involved in an investigation of an individual known to him as "Rashed" in April, 2005. TR 4. The investigation included controlled buys of crack cocaine. TR 5. A photograph of the Defendant, Mr. Jones–then known to Detective Matthews as "Rashed," was taken during one of the controlled buys. Id. The photo is rather blurry but it does reveal a large, dark mark which appears to be a tattoo, on the back of the person's right calf. TR 6, See EX 1. After one of the controlled buys, Detective Matthews

received information that the individual involved in the controlled buys (whose identity they still did not know) may may live at 401 N. Western Avenue, Apartment # 104. TR 6. Detective Matthews and DCI Agent Miranda went to that address on May 10, 2005 at 4:30 p.m. TR 7. Detective Matthews knocked on the door and identified himself as a police officer. Id. Mr. Jones answered, but when asked, identified himself as Jerome Kyles. Id. Mr. Jones stepped into the hallway, closed the door, and asked if he and the officers could go someplace private to talk. Id. Detective Matthews asked if they could go into the apartment to talk. Mr. Jones said "yeah, yeah" turned around, opened the door, and then said "come on in." TR 7. Once inside the apartment, Detective Matthews asked Mr. Jones to lift his pant leg. Mr. Jones complied. Detective Matthews saw a tattoo which looked similar to the one in the photo of the person who had participated in the earlier controlled buy. TR 8.

Detective Matthews advised of his investigation and that, through the controlled buys, he knew Mr. Jones had been selling crack cocaine. Id. Mr. Jones denied involvement. Id. Detective Matthews asked whether anyone else was present in the apartment. TR 9. Mr. Jones said another person was in the front room. Id. For safety purposes, Detective Matthews asked permission to go to the front room to speak with the other person and pat him down for weapons. Id. Mr. Jones consented. Id. All three men (Matthews, Jones and Miranda) went through the kitchen to the front room. TR 10. On the way, Agent Miranda saw controlled substances (crack cocaine) in plain view, on a ledge or half wall, between the kitchen and front room. TR 26. Detective Matthews heard Agent Miranda say "what's this" and Mr. Jones replied "you know what it is." TR 10.

Detective Matthews saw the item Agent Miranda found, and recognized it as crack cocaine. TR 11. He asked Mr. Jones whether there was any more "dope" in the house. Mr. Jones said there was not. TR 27. Matthews asked for permission to search the house. He explained to Mr. Jones he was not required to give permission to search. TR 12. Mr. Jones said the officers could search, but needed to know "what they could do for him" first. Id. Detective Matthews did not believe this was a true "yes" to his request to search, so he decided to apply for a search warrant. Id. He informed Mr. Jones of his intent. TR 13. Detective Matthews requested a couple of patrol units to help detain Mr. Jones and the other person in the apartment while Detective Matthews applied for the warrant. Id. Detective Matthews read Mr. Jones his *Miranda* rights, and explained to Mr. Jones that if he did decide voluntarily turn over any further contraband, it could show that he had knowledge and possession of it in his apartment. TR 13-14, 27, 29.

Mr. Jones asked permission to smoke and sat down on the floor to smoke a cigar. TR 13. He had a brief discussion with Detective Matthews about a possible source of drugs. Id. Then, after a few minutes, he said to Detective Matthews "c'mon man," led him to the bedroom, and opened a drawer. TR 13-14. Detective Matthews told him to slow down and asked if there were any weapons in the drawer. TR 14. Mr. Jones assured him there were not. Id. Mr. Jones grabbed a sock out of the drawer and threw it to Detective Matthews. Id. Mr. Jones said "that's all I have." Inside the sock were 77 grams of crack cocaine. Mr. Jones stated something to the effect that Detective Matthews had all his drugs, so now he should "work with him." TR 15, 31. Law enforcement attempted to work with Mr. Jones on a cooperative basis, but those efforts were not successful.[1] Mr. Jones now moves to suppress the evidence which was recovered from his apartment on May 10, 2005.

## DISCUSSION

As a general rule, the burden of proof is on the defendant who seeks to suppress evidence, United States v. Phillips, 540 F.2d 319 (8th Cir.1976) cert. denied, 429 U.S. 1000, 97 S.Ct. 530, 50 L.Ed.2d 611 (1976), but on the government to justify a warrantless search or seizure. United States v. Bruton, 647 F.2d 818 (8th Cir.1981) cert. denied, 454 U.S. 868, 102 S.Ct. 333, 70 L.Ed.2d 170 (1981). The standard of proof is a preponderance of the evidence. Lego v. Twomey, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972).

Detective Matthews and Agent Miranda did not have a warrant to search Mr. Jones's apartment on May 10, 2005. They arrived at the apartment and conducted what is known as a "knock and talk," hoping to gain Mr. Jones's consent to search.[2] "Federal courts have recognized the knock and talk strategy as a reasonable investigative tool when officers seek to gain an occupant's consent to search or when officers reasonably suspect criminal activity." United States v. Jones, 239 F.3d 716, 720 (5th Cir. 2001) cert. den. 534 U.S. 861, 122 S.Ct. 142, 151 L.Ed.2d 94 (2001).

Detective Matthews credibly testified that after he identified himself, Mr. Jones stepped

---

[1] The details of law enforcement's efforts to recruit Mr. Jones as a confidential informant are quite interesting, but not relevant to the pending motion.

[2] A "knock and talk" has been described as a "casual conversation between the deputies and the target of an investigation, with no show of force." United States v. Heath, 58 F.3d 1271, 1272, fn.3 (8th Cir. 1995) cert. den. 516 U.S. 892, 116 S.Ct. 240, 133 L.Ed.2d 167 (1995).

outside and asked to speak privately to the officers. Detective Matthews suggested they speak inside Mr. Jones's apartment, and Mr. Jones agreed, turned around, opened the door, and said "come on in." Mr. Jones did not offer any conflicting testimony. Detective Matthews also credibly testified that, after Mr. Jones had been advised of his *Miranda* rights and the possible consequences of admitting further contraband was present in the apartment, Mr. Jones led the officers to a drawer in the bedroom and surrendered 77 grams of crack cocaine. "To justify a consensual search, the prosecution has the burden of proving that an individual consented to the search . . . the totality of the circumstances must be considered by the court to determine whether consent was given voluntarily and without coercion[3] . . consent may be inferred through words, actions or conduct of the individual subject to the search." United States v. Heath, 58 F.3d 1271, 1275-76 (8th Cir. 1995)cert. den. 516 U.S. 892, 116 S.Ct. 240, 133 L.Ed.2d 167 (1995).

The Government has met its burden. Mr. Jones clearly indicated consent to enter the apartment when he turned around, opened the door, and said "come on in." Having entered Mr. Jones's apartment lawfully, the officers could act upon the contraband evidence in plain view. United States v. Pennington, 287 F.3d 739, 747 (8th Cir. 2002) cert. den. 557 U.S. 1022, 123 S.Ct. 531, 154 L.Ed.2d 432 (2002).

Mr. Jones also consented to the further "search" of his apartment. Any ambiguity in his consent to search was removed when, after Detective Matthews explained his *Miranda* rights and the possible consequences of admitting the presence of further contraband in the apartment, he led the officers to the bedroom and handed them the 77 grams of crack cocaine. That Mr. Jones was in custody by the time he led the officers to the 77 grams of crack cocaine does not automatically render his consent involuntary or coerced. Custody is merely one of many factors to consider, including: his age, intelligence, education, and chemical intoxication; whether he was told of his right to withhold consent, whether he generally understood his rights, the length of time he had been detained and questioned, whether he had been intimidated by the police, whether he had relied upon police promises or misrepresentations, whether the encounter occurred in public or private, and whether he objected to the search. United States v. Sanchez, 156 F.3d 875, 878 (8th Cir. 1998). Mr. Jones is an adult. He was informed of his right to withhold consent, and did not express any confusion about his rights. He had not been detained and questioned for a long period of time (only a few minutes) before he led the officers to the bedroom and revealed the contraband. There was

---

[3]There was no evidence of coercion.

no evidence of any promises or misrepresentations (on the contrary, Detective Matthews stated he could make no promises). Finally, Mr. Jones did not object to the "search" but rather initiated it by voluntarily revealing the location of the drugs which were hidden in a sock. Considering the totality of the circumstances, Mr. Jones's consent was voluntary.

## CONCLUSION

Detective Matthews and Agent Miranda conducted a lawful "knock and talk" interview with Mr. Jones in hope of obtaining consent to enter and search his apartment. They were successful. Once inside, they observed crack cocaine in plain view. Thereafter, Mr. Jones voluntarily consented to lead them to the location of more crack cocaine. No Fourth Amendment violation occurred. It is therefore respectfully recommended to the District Court that Defendant's Motion to Suppress Evidence (Doc. 21) be **DENIED**.

## NOTICE TO PARTIES

The parties have ten (10) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court.

Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990)
Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

Dated this 30th day of December, 2005.

BY THE COURT:

_____
John E. Simko
United States Magistrate Judge

ATTEST:
JOSEPH HAAS, Clerk

By _Shelly Marguilies_, Deputy
(SEAL)